IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANA W. WILEY,<br><br>    *Plaintiff*,<br><br>v.<br><br>UNION POLICE OFFICER "PETRO", *et al*,<br><br>    *Defendants*. | Civil Action No. 2:22-cv-999<br><br>Hon. William S. Stickman IV |

### **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

This action arises out of an incident on April 22, 2022. *Pro se* Plaintiff Dana W. Wiley ("Wiley") alleges civil rights violations under 42 U.S.C. § 1983 ("§ 1983"). (ECF No. 3).[1] Defendants Union Police Officer "Petro" ("Officer Petroff"[2]) and the Union Township Police Department ("UTPD") have moved for summary judgment arguing that no genuine issues of material fact exist, and they are entitled to judgment in their favor. (ECF No. 50). For the reasons set forth below, Defendants' motion will be granted.

    **I.**    **FACTUAL BACKGROUND**

At 11:21 a.m. on April 22, 2022, Officer Petroff was dispatched for a report of terroristic threats – i.e., a white male wearing all red threatened to kill State Parole Agent Timothy McCutcheon ("Agent McCutcheon") who called Lawrence County Public Safety – near the 3000

---

[1] Wiley is a serial filer of lawsuits in the United States District Court for the Western District of Pennsylvania ("District"). In Case No. 2:22-cv-00707, the Court warned Wiley that if he continued to file lawsuits with the same claims in this District, he would be subject to the entry of a vexatious-litigant order that would require him to obtain permission from the Court before filing future lawsuits. (Case No. 2:22-cv-00707, ECF No. 2, p. 6).

[2] Defendants state that Wiley incorrectly identified Union Township Police Officer Scott Petroff in his complaint as Union Police Officer "Petro." (ECF No. 50).

1

block of McClellan Avenue in Union Township, Lawrence County, Pennsylvania. The body camera, mounted to Officer Petroff's chest, recorded the events beginning with Officer Petroff driving to the location. Once there, Officer Petroff said to Wiley, "Hello, what's going on." And then he informed Wiley, "Just gotta talk to you for a second. That's all." Officer Petroff engaged in a discussion with Wiley and explained that he was there because it was his understanding that Wiley threated to kill Agent McCutcheon and he was trying to figure out what occurred. A mental health delegate then arrived. When Officer Petroff said, "looks like a mental health delegate showed up," Wiley immediately turned and ran. (ECF No. 51, pp. 2-4); (ECF No. 52-1); (ECF No. 52-1).

Officer Petroff and Agent McCutcheon chased Wiley. To stop Wiley, Officer Petroff deployed his taser causing Wiley to fall to the ground. Thereafter, Officer Petroff began to handcuff Wiley and successfully handcuffed his left wrist, but Wiley would not give his right hand to Officer Petroff. Agent McCutcheon had to assist Officer Petroff with handcuffing Wiley. Other than grabbing Wiley's hands and right arm to handcuff him, Officer Petroff did not touch any other part of Wiley's body. Officer Petroff requested that an ambulance be sent to their location due to the taser deployment to evaluate Wiley. While waiting, Wiley requested to sit down, and the officers let him do so. An ambulance arrived, and Wiley was taken to the hospital. (*Id.* at 4-5); (ECF No. 52-1). According to Wiley, he broke his right collar bone and fractured some ribs. (ECF No. 57, p. 1).

Wiley was charged with the following crimes: Terroristic Threats, in violation of 18 Pa. C.S. § 2706(a)(1); Resisting Arrest, in violation of 18 Pa. C.S. § 5104; and Disorderly Conduct, in violation of 18 Pa. C.S. § 5503(a)(1). The magisterial district judge held the charges over for

trial, but no trial date has been set in the Court of Common Pleas of Lawrence County. (*Id*. at 5-6).

## II. STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

When considering a motion for summary judgment, the traditional flexibility toward *pro se* pleadings does not require the Court to indulge evidentiary deficiencies. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 249 (3d Cir. 2013) (citing *Brooks v. Kyler*, 204 F.3d 102, 108 n. 7 (3d Cir. 2000) (indicating that *pro se* litigants still must present at least affidavits to avoid summary judgment)). At summary judgment, a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, i.e., not just mere allegations, to establish a *prima facie* case, and to show that there is a genuine dispute for trial. *See Barnett v. N.J. Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . .

sufficient to convince a reasonable fact finder to find all the elements of her *prima facie* case") (citation and quotation omitted)); *Mitchell v. Gershen*, 466 F. App'x 84, 87 (3d Cir. 2011) (upholding a district court's grant of summary judgment against a *pro se* plaintiff for his failure to submit expert testimony in a denial of medical services suit); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

### III.   ANALYSIS

The facts are undisputed as Wiley failed to respond to Defendants' statement of facts or offer his own statement of facts.[3] It is of note that the April 22, 2022, incident was captured on Officer Petroff's body camera, which the Court has reviewed. After careful consideration of the

---

[3] Local Rule 56.C.1 requires that non-moving parties to a motion for summary judgment file their own concise statement responding to each numbered paragraph in the movant's concise statement. *See* LCvR 56.C.1. The non-moving party's concise statement must admit or deny the facts contained in the movant's concise statement; set forth the basis for denial if any fact within the movant's concise statement is not entirely admitted by the non-moving party, with appropriate citation to the record; and set forth, in separately numbered paragraphs, any other material facts at issue. *See id.* A non-moving party faces severe consequences for not properly responding to a moving party's concise statement. Any alleged material facts "set forth in the moving party's Concise Statement of Material Facts ... which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E.
  Courts provide some leniency to *pro se* litigants when applying procedural rules. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) ("[W]e tend to be flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings."). However, the Court "'is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores for the [pro se litigant] that counsel would normally carry out.'" *Id.* (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). *Pro se* litigants must adhere to procedural rules as would parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Nevertheless, the Court would have considered facts properly alleged by Wiley in his *pro se* responses that specifically contradicted Defendants' statement of the facts (to the extent they were supported by the record), but none have been offered. Thus, the Court is left with Defendants' facts. Wiley has only offered that he broke his right collar bone and fractured ribs. (ECF No. 57, p. 1).

record and the parties' submissions, the Court will grant summary judgment in favor of Defendants.

### A. Summary Judgment is warranted in favor of Officer Petroff.

Officer Petroff argues that he is entitled to qualified immunity as to Wiley's § 1983 claim against him because he used reasonable force under the circumstances. Qualified immunity shields government officials, including police officers, from liability for civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). To determine whether qualified immunity applies, the Court must conduct a two-part inquiry, considering (1) whether Officer Petroff violated a constitutional right and (2) whether that right was clearly established. *See El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (affording courts discretion to decide which step of the qualified immunity analysis to address first). Officer Petroff has the burden of establishing his entitlement to qualified immunity. *See Peroza-Benitez*, 994 F.3d at 165.

The first step of the qualified immunity analysis asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Wiley asserts that Officer Petroff used excessive force in violation of the Fourth Amendment, as applied to the states by the Fourteenth Amendment.[4] Excessive force claims under the Fourth Amendment require proof

---

[4] Wiley brings this claim under § 1983, which provides a cause of action "for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citation omitted). To obtain relief under § 1983, a plaintiff must show that he suffered "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 421

that "a seizure occurred and that it was unreasonable under the circumstances." *El*, 975 F.3d at 336 (citation omitted); *see also Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)). There is no question that a seizure occurred here. Officer Petroff seized Wiley within the meaning of the Fourth Amendment when he tasered Wiley forcing Wiley to the ground and then arresting Wiley. These actions unquestionably constituted an "application of physical force to the body of a person with intent to restrain." *Torres v. Madrid*, 141 S. Ct. 989, 994 (2021). Officer Petroff maintains that the force employed against Wiley was reasonable in light of the circumstances of their interaction.

A challenged use of force is "evaluated for objective reasonableness based upon the information the officer[] had when the conduct occurred." *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017) (quoting *Saucier*, 533 U.S. at 207); *see also Graham*, 490 U.S. at 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). In determining the objective reasonableness of a particular use of force, courts may consider several factors, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the officer or public safety; (3) whether the suspect is actively resisting or attempting to evade arrest; (4) physical injury to the suspect; (5) whether the suspect is violent or dangerous; (6) the duration of the use of force; (7) whether the use of force takes place in the context of effecting an arrest; (8) the possibility that the suspect may be armed; and (9) the number of people with whom the officers must contend at one time. *Graham*, 490 U.S. at 396 (setting forth factors one through three); *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997),

---

F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). There is no dispute that Officer Petroff acted under color of state law. The Court's analysis focuses on the former showing—the violation of a constitutional right—which dovetails with the first step of the qualified immunity inquiry.

abrogated on other grounds by *Curley v. Klem*, 499 F.3d 199, 209–11 (3d Cir. 2007) (setting forth factors four through nine); *see also El*, 975 F.3d at 336. Considering those factors and viewing the facts in the light most favorable to Wiley—as the Court must—a jury could conclude that Officer Petroff's conduct was objectively reasonable.

In examining whether Officer Petroff is protected by qualified immunity, the Court is required to consider what force the officer is accused of using. As explained above, the record in this case, when viewed in a light most favorable to Wiley, cannot support a finding that Officer Petroff is responsible for much, if any, of the harm that Wiley asserts. The only conduct of Officer Petroff that could be viewed as a use of force against Wiley is tasering Wiley as he was fleeing from the officers and having to grab Wiley's right arm as he resisted being handcuffed. No evidence of record supports Wiley's accusation that Officer Petroff restrained him by placing his knees on Wiley's back.

Numerous federal appellate courts, including the United States Court of Appeals for the Third Circuit, "ha[ve] approved [] the use of taser guns to subdue individuals who resist arrest or refuse to comply with police orders." *Brown v. Cwynar*, 484 F. App'x 676, 680 (3d Cir. 2012) (affirming district court grant of qualified immunity to a police officer who tased a 73 year old man who refused to give the officer his car keys); *Grab v. Columbia Borough*, No. 20-1815, 2022 WL 103350, at *7 (E.D. Pa. Jan. 10, 2022) (citing Estep v. Mackey, No. 3:11-207, 2016 WL 1273249, at *2, *6 (W.D. Pa. Mar. 31, 2016) ("Estep II") (granting qualified immunity on remand to the police officer who deployed a taser when plaintiff attempted to run away while being escorted to police station)); *McNeil v. City of Easton*, 694 F. Supp. 2d 375, 393–95 (E.D. Pa. 2010) (citing *Wargo v. Municipality of Monroeville*, 646 F. Supp. 2d 777, 786 (W.D. Pa. 2009) ("Even if a plaintiff is not armed, it is reasonable for law enforcement officers to employ

multiple rounds of non-lethal force if necessary to effectuate an arrest.")); *Gruver v. Borough of Carlisle*, No. 4:CV 05-1206, 2006 WL 1410816, at *3, *5 (M.D. Pa. May 19, 2006) (holding that police officers attempting to restrain unarmed plaintiff who appeared to be intoxicated or in distress did not use excessive force when, in order to protect plaintiff, themselves, and others, they deployed a taser three times). The Court holds that in light of the circumstances in this case (Wiley's threats to McCutcheon and fleeing from police upon the arrival of a mental health delegate), Officer Petroff's deployment of his taser was not objectively unreasonable.

The Court further holds that the only other conduct specifically attributed to Officer Petroff—grabbing Wiley's right arm as he resisted being handcuffed—is not objectively unreasonable. It is well-established that police officers are permitted to use a reasonable amount of force to effect an arrest; the degree of this force is dictated by the suspect's behavior. Here, Wiley was an obstacle preventing the police from performing an official function (handcuffing him) by refusing to comply. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (quoting *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)).

> Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, … however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396 (quotation, citation, and alteration omitted); *see also Tennessee v. Garner*, 471 U.S. 1, at 8–9 (1985) ("[T]he question [is] whether the totality of the circumstances justifie[s] a particular sort of … seizure"). No reasonable jury could find that Officer Petroff engaged in an unlawful use of force by moving Wiley's right arm in order to get the handcuffs around his right

8

wrist. The body camera footage reveals that the handcuffing of Wiley was not executed with an unusual level of force or violence.

Because the Court holds that the only two allegations of force against Wiley by Officer Petroff were not objectively unreasonable in the circumstances, the Court holds that he is protected by qualified immunity. Summary judgment will be entered in favor of Officer Petroff as to Wiley's § 1983 claim against him.

### B. Summary judgment will be entered in favor of Defendants as to Wiley's Eighth Amendment claims against them.

It is undisputed that the criminal charges filed against Wiley by Officer Petroff as a result of the events of April 22, 2022, remain pending in the Court of Common Pleas of Lawrence County at docket number CP-37-MD-0000647-2022. Defendants correctly argue that summary judgment must be entered in their favor as to Wiley's Eighth Amendment claims as the Eighth Amendment's protections apply "only after the State has secured a formal adjudication of guilt in accordance with due process of law." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (cleaned up) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). It is well-settled that because Wiley was a pretrial detainee, rather than a sentenced prisoner, the Fourteenth Amendment applies to his § 1983 claims, rather than the Eighth Amendment.

### C. Summary judgment in favor of UTPD is warranted.

UTPD is not a proper defendant. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court of the United States held that local governments are "persons" and are subject to suit under § 1983. Following *Monell*, courts have concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See e.g., Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79

(W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id. See also Martin v. Red Lion Police Dept.*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (per curiam) (noting that "the Red Lion Police Department, as the sub-division of defendant Red Lion Borough through which the Red Lion Borough fulfills its policing functions, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983"); *Hadesty v. Rush Twp. Police Dep't*, Civil Action No. 3:14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016) ("A municipal police department cannot be sued separately from the municipality of which it is a part because it is not a separate independent entity."); *Terrell v. City of Harrisburg Police Dept.*, 549 F. Supp. 2d 671, 686 (M.D. Pa. 2008) ("It is well-settled that police departments operated by municipalities are not 'persons' amenable to suit under § 1983."). UTPD is not amenable to suit under § 1983. Furthermore, UTPD cannot be held liable for the actions of Officer Petroff under a *respondeat superior* theory of liability. And, as discussed in the preceding sections herein, no evidence adduced in discovery exists that Wiley suffered a violation of a right secured by the Constitution and laws of the United States. Summary judgment will be entered in favor of UTPD on Wiley's § 1983 claims

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 50) will be granted. Judgment will be entered in favor of Officer Petroff and UTPD and against Wiley. Orders of Court will follow.

BY THE COURT:

/s/ William S. Stickman IV

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date: 12-4-2023