IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANA W. WILEY,<br><br>              *Plaintiff,*<br><br>v.<br><br>UNION POLICE OFFICER "PETRO", *et al,*<br><br>              *Defendants.* | Civil Action No. 2:22-cv-999<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

This action arises out of an incident on April 22, 2022. *Pro se* Plaintiff Dana W. Wiley ("Wiley") alleges civil rights violations under 42 U.S.C. §1983 ("§1983"). (ECF No. 3).[1] Defendant State Farrell Parole Agent "Tim McGraw" ("McCutcheon"[2]) has moved for summary judgment arguing that no genuine issues of material fact exist, and he is entitled to judgment in his favor. (ECF No. 70). Wiley has moved for summary judgment in his favor arguing that McCutcheon broke his right collar bone and fractured his ribs. (ECF No. 69). For the reasons set forth below, McCutcheon's motion will be granted and Wiley's motion will be denied as moot. Summary judgment will be entered in favor of McCutcheon.

---

[1] Wiley is a serial filer of lawsuits in the United States District Court for the Western District of Pennsylvania ("District"). In Case No. 2:23-cv-01175, the Court entered a vexatious-litigant order against Wiley that enjoined him from filing any complaint, lawsuit or petition for writ of mandamus in the District without prior authorization from the Court. (Case No. 2:23-cv-01175, ECF No. 11).

[2] Defendant states that Wiley incorrectly identified him, and his name is Timothy McCutcheon. (ECF No. 70). Throughout this opinion, the Court will use McCutcheon's correct name.

## I.   FACTUAL BACKGROUND

At 11:11 a.m. on April 22, 2022, McCutcheon, a state parole agent, was attempting to make contact with a parolee.  Before exiting his vehicle, he heard yelling behind him. When McCutcheon looked in the rear view mirror, he observed Wiley screaming, "fuck you fed, I will fuck you and your boys up," while looking in McCutcheon's direction.  (ECF No. 72, pp. 1-2). This prompted McCutcheon to call 911 to inform them that there was a potentially dangerous and unstable person on McClelland Avenue threatening him.  (*Id.* at 2).

At 11:21 a.m., Union Township Police Officer Scott Petroff was dispatched for a report of terroristic threats – i.e., a white male wearing all red threatened to kill McCutcheon who called Lawrence County Public Safety – near the 3000 block of McClelland Avenue in Union Township, Lawrence County, Pennsylvania.  The body camera, mounted to Officer Petroff's chest, recorded the events beginning with Officer Petroff driving to the location.  Once there, Officer Petroff said to Wiley, "Hello, what's going on."  He then informed Wiley, "Just gotta talk to you for a second.  That's all."  Officer Petroff engaged in a discussion with Wiley and explained that he was there because it was his understanding that Wiley threatened to kill McCutcheon and he was trying to figure out what occurred.  A mental health delegate then arrived.  When Officer Petroff said, "looks like a mental health delegate showed up," Wiley immediately turned and ran.  (ECF No. 51, pp. 2-4); (ECF No. 52-1); (ECF No. 54); (ECF No. 72, p. 2).

Officer Petroff and McCutcheon chased Wiley.  To stop Wiley, Officer Petroff deployed his taser causing Wiley to fall to the ground.  McCutcheon saw Wiley reaching for what appeared to him to be a phone, and he kicked it out of the way.  Officer Petroff began to handcuff Wiley and successfully handcuffed his left wrist.  Wiley would not give his right hand

to Officer Petroff.  McCutcheon had to assist Officer Petroff with handcuffing Wiley.  First, he attempted to pull Wiley's right arm, but was unable to do so due to Wiley's resistance.  After moving away from the taser probes, McCutcheon put his right knee on Wiley's shoulder to allow Officer Petroff to gain control of Wiley's right arm to handcuff Wiley.  McCutcheon helped Officer Petroff assist Wiley to his feet.  Officer Petroff requested that an ambulance be sent to their location due to the taser deployment to evaluate Wiley.  While waiting, Wiley requested to sit down, and the officers let him do so.  An ambulance arrived, and Wiley was taken to the hospital.  (*Id.* at 4-5); (ECF No. 52-1); (ECF No. 54); (ECF No. 72, pp. 2-4).  He was then charged with the following crimes:  Terroristic Threats, in violation of 18 Pa. C.S. §2706(a)(1); Resisting Arrest, in violation of 18 Pa. C.S. §5104; and Disorderly Conduct, in violation of 18 Pa. C.S. §5503(a)(1).  (ECF No. 73-2).

## II.      STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The Court must view the evidence presented in the light most favorable to the nonmoving party.  *Id.* at 255.  It refrains from making credibility determinations or weighing the evidence.  *Id.*  "[R]eal questions about credibility, gaps in the evidence, and doubts

as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).[3]

When considering a motion for summary judgment, the traditional flexibility toward *pro se* pleadings does not require the Court to indulge evidentiary deficiencies. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 249 (3d Cir. 2013) (citing *Brooks v. Kyler*, 204 F.3d 102, 108 n. 7 (3d Cir. 2000) (indicating that *pro se* litigants still must present at least affidavits to avoid summary judgment)). At summary judgment, a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, i.e., not just mere allegations, to establish a *prima facie* case, and to show that there is a genuine dispute for trial. *See Barnett v. N.J. Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her *prima facie* case") (citation and quotation omitted)); *Mitchell v. Gershen*, 466 F. App'x 84, 87 (3d Cir. 2011) (upholding a district court's grant of summary judgment against a *pro se* plaintiff for his failure to submit expert testimony in a denial of medical services suit); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

---

[3] "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining for each side whether a judgment may be entered in accordance with the Rule 56 standard.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citation omitted). If upon review of a party's motion for summary judgment, the court, viewing the evidence in the light most favorable to the nonmoving party, enters summary judgment for the moving party, the court may properly declare the opposing party's cross-motion for summary judgment as moot. *Beenick v. LeFebvre*, 684 F. App'x 200, 205–06 (3d Cir. 2017).

### III.   ANALYSIS

The facts are undisputed as Wiley failed to respond to McCutcheon's statement of facts or offer his own statement of facts.[4]  It is of note that the April 22, 2022, incident was captured on Officer Petroff's body camera, which the Court has reviewed.  After careful consideration of the record and the parties' submissions, the Court will grant summary judgment in favor of McCutcheon.

**A.  Summary Judgment is warranted in favor of McCutcheon.**

McCutcheon argues that he is entitled to qualified immunity as to Wiley's §1983 claim against him because he used reasonable force under the circumstances.   Qualified immunity

---

[4] Local Rule 56.C.1 requires that nonmoving parties to a motion for summary judgment file their own concise statement responding to each numbered paragraph in the movant's concise statement. *See* LCvR 56.C.1.  The nonmoving party's concise statement must admit or deny the facts contained in the movant's concise statement; set forth the basis for denial if any fact within the movant's concise statement is not entirely admitted by the nonmoving party, with appropriate citation to the record; and set forth, in separately numbered paragraphs, any other material facts at issue. *See id.*  A nonmoving party faces severe consequences for not properly responding to a moving party's concise statement.  Any alleged material facts "set forth in the moving party's Concise Statement of Material Facts ... which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E.

Courts provide some leniency to *pro se* litigants when applying procedural rules. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) ("[W]e tend to be flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings."). However, the Court "'is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores for the [pro se litigant] that counsel would normally carry out.'" *Id.* (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)).  *Pro se* litigants must adhere to procedural rules as would parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

The Court would have considered facts properly alleged by Wiley, but none have been offered.  Wiley claims that he broke his right collar bone and fractured ribs, but he has not come forth with any supporting medical evidence. (ECF No. 69).  All he has presented is an April 26, 2022, record referencing an outpatient observation for "orif right clavicle" (ECF No. 3-1).  Wiley failed to adduce any medical evidence and/or testimony in discovery that his purported injury was related to (or caused by) the events of April 22, 2022.  This contributes to why his motion his moot – he has come forth with no genuine issue of material fact.

shields government officials, including police officers, from liability for civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018).   To determine whether qualified immunity applies, the Court must conduct a two-part inquiry, considering (1) whether McCutcheon violated a constitutional right; and (2) whether that right was clearly established. *See El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (affording courts discretion to decide which step of the qualified immunity analysis to address first).   McCutcheon has the burden of establishing his entitlement to qualified immunity.  *See Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021).

The first step of the qualified immunity analysis asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   Wiley asserts that McCutcheon used excessive force in violation of the Fourth Amendment, as applied to the states by the Fourteenth Amendment.[5]   Excessive force claims under the Fourth Amendment require proof that "a seizure occurred and that it was unreasonable under the circumstances." *El*, 975 F.3d at 336 (citation omitted); *see also Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)).

---

[5] Wiley brings this claim under §1983, which provides a cause of action "for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citation omitted). To obtain relief under §1983, a plaintiff must show that he suffered "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).   There is no dispute that McCutcheon acted under color of state law.   The Court's analysis focuses on the former showing—the violation of a constitutional right—which dovetails with the first step of the qualified immunity inquiry.

There is no question that a seizure occurred here. Officer Petroff seized Wiley within the meaning of the Fourth Amendment when he tasered Wiley, forced Wiley to the ground, and arrested Wiley with the assistance of McCutcheon. These actions unquestionably constituted an "application of physical force to the body of a person with intent to restrain." *Torres v. Madrid*, 592 U.S. 306, 309 (2021).

The next step of the analysis is to determine whether the seizure was unreasonable under the circumstances. McCutcheon maintains that the force employed by him against Wiley – i.e., placing his knee on Wiley's shoulder and restraining Wiley's right arm so that Officer Petroff could complete the handcuffing process – was reasonable in light of the circumstances of their interaction.

A challenged use of force is "evaluated for objective reasonableness based upon the information the officer[] had when the conduct occurred." *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017) (quoting *Saucier*, 533 U.S. at 207); *see also Graham*, 490 U.S. at 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). In determining the objective reasonableness of a particular use of force, courts may consider several factors, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the officer or public safety; (3) whether the suspect is actively resisting or attempting to evade arrest; (4) physical injury to the suspect; (5) whether the suspect is violent or dangerous; (6) the duration of the use of force; (7) whether the use of force takes place in the context of effecting an arrest; (8) the possibility that the suspect may be armed; and (9) the number of people with whom the officers must contend at one time. *Graham*, 490 U.S. at 396 (setting forth factors one through three); *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997),

abrogated on other grounds by *Curley v. Klem*, 499 F.3d 199, 209–11 (3d Cir. 2007) (setting forth factors four through nine); *see also El*, 975 F.3d at 336.

Considering these factors and viewing the facts in the light most favorable to Wiley, the Court holds that the conduct specifically attributed to McCutcheon—placing his knee on Wiley's shoulder and restraining Wiley's right arm—is not objectively unreasonable. It is well-established that police officers are permitted to use a reasonable amount of force to effect an arrest; the degree of this force is dictated by the suspect's behavior. Wiley was preventing the police from performing an official function (handcuffing him) by refusing to comply. He was actively resisting Officer Petroff and not obeying his commands. This was not a situation involving a person lying prone, waiting to be handcuffed.

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (quoting *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)). *See also Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) ("It is well settled that '[p]olice officers are privileged to commit a battery pursuant to a lawful arrest.'" (citation omitted)).

> Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, … however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396 (quotation, citation, and alteration omitted); *see also Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) ("[T]he question [is] whether the totality of the circumstances justifie[s] a particular sort of … seizure"). No reasonable jury could find that McCutcheon engaged in an unlawful use of force by momentarily placing his knee on Wiley's shoulder and

8

restraining Wiley's right arm so that Officer Petroff could complete the handcuffing process. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 7 (2021) (per curiam) (finding that officer's placement of knee on back of arrestee for no more than eight seconds to disarm arrestee of knife and effectuate lawful arrest did not violate a clearly established right); *see also Brown v. Rinehart*, 325 F. App'x 47, 51 (3d Cir. 2009) (use of officer's right knee to deliver a "stun blow" to arrestee's right thigh was objectively reasonable because it was proportional to the need for force in light of active resistance to arrest). The body camera footage reveals that the handcuffing of Wiley was not executed with an unusual level of force or violence.

Because the Court finds that the force employed by McCutcheon was objectively reasonable in the circumstances and therefore not a violation of Wiley's constitutional rights, it holds that McCutcheon is protected by qualified immunity. Summary judgment will be entered in favor of McCutcheon as to Wiley's §1983 claim against him.[6]

## IV.   CONCLUSION

For the foregoing reasons, McCutcheon's summary judgment motion will be granted, and Wiley's summary judgment motion will be denied as moot. Judgment will be entered in favor of McCutcheon and against Wiley. Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date: 4-17-2024

---

[6] No viable Eighth Amendment claim against McCutcheon exists. The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). McCutcheon was not the charging officer for the criminal charges filed against Wiley (ECF No. 73-2), and no evidence exists that McCutcheon had (or has) any involvement with Wiley's conditions of imprisonment.